No. 16-1981

# United States Court of Appeals
# for the Federal Circuit

PETRO-HUNT, L.L.C.

*Plaintiff-Appellant*

v.

UNITED STATES,

*Defendant-Appellee.*

On Appeal From The United States Court of Federal Claims
Case Nos. 00-512L, 11-775L, Judge Marian Blank Horn

## CORRECTED REPLY BRIEF FOR PLAINTIFF-APPELLANT

Edmund M. Amorosi
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive
Suite 900
Tysons Corner, Virginia 22182
(703) 847-6300
eamorosi@smithpachter.com

D. Joe Smith
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, D.C. 20001
(202) 639-6000
jsmith@jenner.com

J. Ralph White
Sharon L. Andrews
B. Alan Baker
WHITE ANDREWS &
SHACKELFORD, LLC
650 Poydras Street, Suite 2319
New Orleans, Louisiana 70130
(504) 799-2585
ralph@whiteandrews.com

*Counsel for Petro-Hunt, L.L.C*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iii

INTRODUCTION ..................................................................................... 1

ARGUMENT.............................................................................................3

I.  Petro-Hunt's Permanent Takings and Contract Claims Were
    Timely Filed .................................................................................... 3

II.  Petro-Hunt's Temporary Physical Takings Claims Were
     Timely Filed .................................................................................. 8

III.  Section 1500 Does Not Bar Petro-Hunt's Claims................................. 13

     A.  Section 1500 Cannot Operate to Preclude Petro-Hunt's
         Constitutional Claims........................................................ 16

     B.  The Government's Contention That Petro-Hunt Waived
         Certain Arguments Regarding § 1500's Application Is
         Incorrect .......................................................................... 19

IV.  Petro-Hunt's Judicial Taking Claim Falls Under the Court of
     Federal Claims' Exclusive Jurisdiction ................................................24

     A.  The Supreme Court Is Not the Only Forum That Can
         Adjudicate a Judicial Takings Claim ............................................26

CONCLUSION............................................................................................29

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

CASES

*Arkansas Game and Fish Commission v. United States*,
133 S. Ct. 511 (2012) .............................................................. 11, 12

*Caldwell v. United States*,
391 F.3d 1226 (Fed. Cir. 2004) ................................................ 8, 9

*Cemex, S.A. v. United States*,
133 F.3d 897 (Fed. Cir. 2001) ...................................................... 20

*Central Pines Land Co., Inc. v. United States*,
274 F.3d 881 (5th Cir. 2001) .......................................................... 7

*Central Pines Land Co., Inc. v. United States*,
697 F.3d 1360 (Fed. Cir. 2012) ...................................................... 7

*Creppel v. United States*,
41 F.3d 627 (Fed. Cir. 1994) ..................................................... 9, 10

*DLX, Inc. v. Kentucky*,
381 F.3d 511 (6th Cir. 2004) ........................................................ 17

*E. Enters. v. Apfel*,
524 U.S. 498, 520 (1998) ............................................................. 27

*First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*,
482 U.S. 304 (1987) ...................................................................... 16

*Frantz Equipment Co. v. United States*,
98 F. Supp. 579 (Ct. Cl. 1951) ............................................... 15, 16

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) .................................................... 23

*Keene Corp. v. United States*,
508 U.S. 200 (1993) ............................................................... 13, 17

*Lorretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) ...................................................................... 11

*Maryland v. Baltimore Radio Show*,
338 U.S. 912 (1950) ...................................................................... 28

*Ministerio Roca Solida v. United States*,
778 F.3d 1351 (Fed. Cir. 2015) .................................................... 20

*Natn'l Advertising Co. v. City of Rolling Meadows*,
789 F.2d 571 (7th Cir. 1986) ........................................................ 20

*Penn Cent. Transp. Co. v. City of New York*,
438 U.S. 104 (1978) ...................................................................... 12

*Petro-Hunt, L.L.C. v. United States*,
365 F.3d 385 (5th Cir. 2004). ......................................................... 4

*Reed Island-MLC, Inc. v. United States,*
    67 Fed. Cl. 27 (2005) ................................................................. 10

*Samish Indian Nation v. United States,*
    419 F.3d 1355 (Fed. Cir. 2005) ...................................................... 4

*Seven Up Pete Venture v. Schweitzer,*
    523 F.3d 948 (9th Cir. 2008) ........................................................ 17

*Smith v. United States,*
    709 F.3d 1114 (Fed. Cir. 2013) ..................................................... 25

*Stop the Beach Renourishment, Inc. v. Fl. Dept. of Env't Res.,*
    560 U.S. 702 (2010) (plurality opinion)................................ 24, 27, 28

*Tecon Eng'rs, Inc. v. United States,*
    343 F.2d 943 (Ct. Cl. 1965) .......................................................... 21

*Texas v. Brown,*
    460 U.S. 730 (1983) ...................................................................... 24

*Trusted Integration, Inc. v. United States,*
    659 F.3d 1159 (Fed. Cir. 2011) ..................................................... 14

*United States v. Carver,*
    260 U.S. 482 (1923) ...................................................................... 28

*United States v. Little Lake Misere Land Co., Inc.,*
    412 U.S. 580 (1973) ........................................................................ 7

*United States v. Nebo Oil Company,*
    190 F.2d 1003 (5th Cir. 1951) ......................................................... 5

*United States v. Tohono O'odham Nation,*
    563 U.S. 307 (2011) ................................................................. 18, 21

## STATUTES

28 U.S.C. § 1346(a)(2) ....................................................... 15
28 U.S.C. § 1491(a)(1) ....................................................... 24
28 U.S.C. § 1500........................................ 6, 13, 14, 15, 16, 18, 19, 22
28 U.S.C. § 2409a........................................................................ 6

## OTHER AUTHORITIES

Josh Patashnik, *Bringing a Judicial Takings Claim,*
    64 Stan. L. Rev. 255 (2012) ......................................................... 25

# INTRODUCTION

In reliance on Fifth Circuit precedent, on February 18, 2000, Petro-Hunt filed suit in the district court against the United States to quiet title to ninety-six mineral servitudes on 180,000 acres of land in the Kisatchie National Forest. On August 24, 2000, Petro-Hunt filed suit in the Court of Federal Claims ("CFC") in the event that its property was taken and Petro-Hunt was owed just compensation. Until the Quiet Title Action was resolved, Petro-Hunt's claims in the CFC were not ripe for adjudication. The Government agreed to a stay of the CFC action that lasted for eight years, to Petro-Hunt's later detriment.

The title issue was resolved when the Fifth Circuit did an about face from its 1951 decision concerning the same mineral property. While it affirmed that Petro-Hunt was the owner of five of the servitudes, now subject to prescription, the Fifth Circuit held that the remaining ninety-one servitudes had prescribed in favor of the United States. As a result of the Quiet Title Action, the United States now owns this mineral property despite the fact that (i) in 1951, the Fifth Circuit held that the United States had promised the landowners in writing in the 1930s that this mineral property would never prescribe and that the United States did not buy and did not pay for the minerals; and (ii) the Louisiana and federal public records and the

parties' course of conduct over decades reflected that private parties owned this mineral property in perpetuity. Petro-Hunt then sought compensation in the CFC for this inequitable situation.

Petro-Hunt's claims were dismissed after the Government challenged the CFC's jurisdiction through three separate motions to dismiss filed over seven years. Petro-Hunt's appeal of the CFC's dismissal presents this Court with several significant questions concerning the extent of the CFC's jurisdiction. The Government views the CFC's jurisdiction in takings cases as exceedingly limited, to the point where few claims against the United States for just compensation can overcome the CFC's jurisdictional hurdles. Under the Government's reasoning, jurisdictional limitations may deprive property owners of their right to seek just compensation, regardless of the fact that no waiver of sovereign immunity is necessary for the constitutional claims asserted.

In contrast, Petro-Hunt has shown that the CFC's jurisdiction is not so narrow, and Petro-Hunt's claims fall within its boundaries. Nevertheless, Petro-Hunt has also shown that, to the extent that the CFC's jurisdictional hurdles prevent Petro-Hunt from vindicating a fundamental right to just compensation under the Constitution, those hurdles must give way to such constitutional rights.

Because Petro-Hunt's takings and contract claims do fall under the CFC's exclusive jurisdiction, this Court should reverse the CFC's judgment and allow Petro-Hunt to finally have its compensation claims heard on the merits, over sixteen years after first bringing this lawsuit.

**ARGUMENT**

**I.      Petro-Hunt's Permanent Takings and Contract Claims Were Timely Filed**

Petro-Hunt's permanent taking and contract claims (Counts I, IV-VII) accrued when the United States obtained Petro-Hunt's mineral servitudes through the application of the Louisiana law of prescription. That is undisputed. The dispute—and resulting reversible error—lies in when the servitudes were deemed to have prescribed to the United States.

The CFC erred in determining that the servitudes began to prescribe in the 1940s and, thus, Petro-Hunt's claims accrued long ago, subject to the accrual suspension rule due to Act 315, *Nebo Oil*, and other factors. The CFC found that accrual suspension ended in 1993, when the Bureau of Land Management ("BLM") sent Petro-Hunt's predecessor in title a series of letters asserting that BLM believed the mineral servitudes in question had prescribed to the United States. Appx17 (*Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 63-64 (2009)). The BLM based its prescription claim on the Executive Branch's own interpretation of Louisiana law and

inapposite case law. The CFC found this to be the time at which accrual suspension ended and Petro-Hunt's claims accrued. Appx18 (*Id.* at 64).

Petro-Hunt's claims could not have accrued, however, until the Quiet Title Action resulted in the servitudes actually becoming subject to prescription, leading to the United States obtaining the mineral interests. This was the "necessary element" to Petro-Hunt's CFC claims becoming ripe for adjudication. *See* PH Br.[1] at 21-23; *Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005).[2]

In its 2004 decision, the Fifth Circuit reversed the district court's judgment that was in Petro-Hunt's favor and determined that "the 95 servitudes that were not at issue in *Nebo Oil* are subject to the contractual provisions permitting prescription after ten years' nonuse." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 399 (5th Cir. 2004). The Fifth Circuit remanded the case for the district court to apply the law of prescription and determine which servitudes, if any, had prescribed. *Id.*

---

[1] In this Reply Brief, Petro-Hunt uses the following designations: references to Petro-Hunt's Opening Brief are "PH Br." and the United States' Response Brief are "Gov. Br.".

[2] The Government states that Petro-Hunt's accrual argument under *Samish* applies to its judicial takings claim. Gov. Br. at 23. But Petro-Hunt's permanent takings and contract claims (Counts I, IV-VIII) are not based on a judicial takings theory (Count VIII). Moreover, Petro-Hunt's judicial takings claim was not time-barred.

The district court's resulting judgment in 2005, which the Fifth Circuit affirmed in 2007, determined that ninety servitudes that had not been drilled within the past ten years now belonged to the United States. The five retained servitudes were no longer imprescriptible. This result contravened the Government's promises over eighty years ago—which induced the owners to sale their land—that prescription would not apply. After the district court applied the law of prescription to all of the servitudes and the Fifth Circuit affirmed that decision, the United States obtained the property interests at issue.

Concluding that the servitudes began to prescribe in the 1940s ignores Petro-Hunt's prior perpetual ownership interest, as established by the Fifth Circuit's decision in *United States v. Nebo Oil Company*, 190 F.2d 1003 (5th Cir. 1951), the parties' agreements and negotiations, the U.S. Forest Service's own records at late as 2001, the unchallenged affidavits of perpetual ownership that Nebo Oil Company filed in the parish land records, and the parties' course of conduct over decades. *See* PH Br. at 8. Moreover, Petro-Hunt's perpetual ownership in the *Nebo Oil* mineral acreage still exists.[3] Based on these facts, Petro-Hunt justifiably chose to litigate its title

---

[3] The "*Nebo Oil* servitude" did not escape the law of prescription entirely after the Quiet Title Action. Gov. Br. at 21. Only the 800 acres described in the Government's *Nebo Oil* complaint remain imprescriptible. Now, 320

first before pursuing any just compensation claims in the CFC that would have accrued after the Quiet Title Action.

Yet the Government refuses to accept that if a plaintiff prefers to retain title to its property rather than recover just compensation alone for a taking of that property, the plaintiff would first proceed in the district court, to which Congress granted jurisdiction to quiet title under 28 U.S.C. § 2409a. As Petro-Hunt explained in its Opening Brief, the CFC is not authorized to declare present title to property; it can determine only whether a compensable property interest existed after the plaintiff has conceded the validity of the governmental action. PH Br. at 22. Because Congress has split jurisdiction between the district courts and the CFC in this situation—a situation that can lead to the constitutional problems discussed *infra* regarding 28 U.S.C. § 1500—these suits in effect become necessarily sequential. If Petro-Hunt had filed suit only in the CFC, it would not have retained ownership of the five servitudes that it still owns following the Quiet Title Action. Congress's waiver of sovereign immunity allowing suits against the United States to quiet title under § 2409a should not operate to

---

acres of the 1120-acre "*Nebo Oil* servitude," which was part of a larger 37,352-acre mineral conveyance, are subject to the law of prescription. PH Br. at 7, 12. No court has reconciled this inconsistent result.

prevent Petro-Hunt from asserting its constitutional right to just compensation in the CFC.

Finally, Petro-Hunt must refute the Government's continued and erroneous attempts to portray Petro-Hunt's case as "identical" to *Central Pines Land Co., Inc. v. United States*, 697 F.3d 1360 (Fed. Cir. 2012). *See* Gov. Br. at 18, 22, 28, 31. Although both cases involve the United States acquiring minerals in Louisiana through the law of prescription, this case is distinct from *Central Pines*.

Unlike Petro-Hunt, the *Central Pines* mineral owners were not successors in interest to Nebo Oil Company and were not entitled to rely on the *Nebo Oil* judgment or a judicial finding by the Fifth Circuit that the United States did not pay for these mineral rights. Nor could Central Pines assert that the Government had promised during negotiations for sale that prescription would not apply. In *Central Pines Land Co., Inc. v. United States*, 274 F.3d 881, 887 (5th Cir. 2001), the Fifth Circuit noted that it was unnecessary to determine whether *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580 (1973), had implicitly overruled *Nebo Oil*, and further noted that the *Central Pines* court could not overrule *Nebo Oil*, nor had any Fifth Circuit en banc opinion done so. *Id.* at 890, 893-94. The

Government's effort to portray the two cases as "identical" does nothing more than confuse the issues and should be rejected.

For these reasons and those explained in Petro-Hunt's Opening Brief, this Court should reverse the CFC's judgment dismissing Petro-Hunt's permanent takings claims (Count I) and contract claims (Counts IV-VII) as barred by 28 U.S.C. § 2501. The Court's ruling on the statute of limitations issue should extend to Counts I and IV-VII of Petro-Hunt's 2011 suit, No. 11-775.

## II.  Petro-Hunt's Temporary Physical Takings Claims Were Timely Filed

Petro-Hunt's temporary physical takings claims are based on a series of ten-year mineral leases to Petro-Hunt's mineral property that the Government issued to third parties. Appx19. Considering factors that inform the accrual date for temporary regulatory takings, Petro-Hunt argues that its temporary physical takings claims accrued when the leases ended or were terminated, not when they were issued. The Government never disputes that these considerations are valid. Instead, the Government argues that they should not inform the accrual date for temporary physical takings.

Relying on *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), the Government argues that the accrual dates of Petro-Hunt's temporary physical takings claims were fixed at the time the mineral leases were

issued. Gov. Br. at 25-26. In *Caldwell*, a Rails-to-Trails case, the Court determined that the taking accrued at the issuance of the Notice of Interim Trail Use ("NITU"). 391 F.3d at 1233-34. The Government cites the *Caldwell* Court's statement that "[i]t is not unusual that the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues," which related to the outcomes of NITUs issued under the Rails-To-Trails Act and the post-NITU events that may affect the takings claim.[4] In reliance on *Caldwell*, the Government argues that Petro-Hunt's temporary physical takings claims accrued when the ten-year mineral leases were issued. Gov. Br. at 25-26.

Yet with regard to temporary regulatory takings, this Court has indicated that "property owners cannot sue for a temporary taking until the regulatory process that began it has ended. . . . because they would not know the extent of their damages until the Government completes the 'temporary' taking." *Creppel v. United States*, 41 F.3d 627, 632 (Fed. Cir. 1994)

---

[4] The Government has indicated that it does not agree with the Court's analysis of that Rails-to-Trails issue in *Caldwell*. *See* Gov. Br. at 26 n. 5. Petro-Hunt fails to see how the Government's opposition to *Caldwell* in similar Rails-to-Trails cases is compatible with its reliance on *Caldwell* in this case, which concerns "very different factual circumstances and legal allegations." *Id.*

(citations omitted); *see also* Gov. Br. at 28.[5] Petro-Hunt argues that the accrual of a temporary physical taking should be no different. PH Br. at 28. In response, the Government offers unfounded concerns of inconsistency and unpredictability as to why the Court's rationale in *Creppel* should not be extended to temporary physical takings claims.

Here, the CFC decided in 2009 not to apply that the accrual rule applicable to temporary regulatory takings (citing *Creppel*), which treats the claim as accrued at the end of the temporary taking, because regulatory takings rely heavily on the degree of diminution of the value of the property over time. Appx20 (90 Fed. Cl. at 65). Instead, the CFC applied its own rule and found that both permanent and temporary physical takings accrue when the Government comes into physical possession of the land. Appx22 (90 Fed. Cl. at 67). The Government claims there is no legal support for a decision to the contrary.

---

[5] The Government argues that the statements in *Creppel* are dicta because the taking at issue there was time-barred regardless of its accrual date. While ultimately the claim in *Creppel* was untimely whether measured from the beginning or end of the taking, the *Creppel* court's statements have guided the CFC's accrual analysis in other decisions, including the decision here (Appx19-21), and the CFC has followed them with approval in other decisions. *See*, *e.g.*, *Reed Island-MLC, Inc. v. United States*, 67 Fed. Cl. 27, 34, 36 (2005) ("By contrast, a temporary takings claim accrues when "the regulatory [or other] process that began it has ended" because, among other things, the property owner "would not know the extent of their damages until the Government completes the 'temporary' taking. . . . In short, *Creppel* governs this case.") (internal citations omitted).

Since the CFC's decision in 2009, however, the Supreme Court has

embraced the notion that analyzing a temporary physical taking requires a

detailed and fact-sensitive balancing test much like that applied to temporary

regulatory takings. In *Arkansas Game and Fish Commission v. United

States*, 133 S. Ct. 511, 522-23 (2012), the Supreme Court noted that factors

pertinent to whether government-induced temporary flooding effects a

temporary physical taking include severity, duration, character of the parcel,

and the owner's expectations regarding the parcel's use. *Id.* The Court cited

both its physical and regulatory takings decisions, including *Lorretto v.

Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, n.12 (1982) for

the proposition that "temporary physical invasions should be assessed by

case-specific factual inquiry[.]" *Id.* at 522 (other citations omitted).

Consequently, the same consideration of factors that has led courts to

find that temporary regulatory takings claims should accrue at the end of the

taking is warranted when determining the accrual date for a temporary

physical taking claim.[6] Those considerations in this case include, among

others, distinguishing between the act of issuing the leases and the acts that

occur under the leases, based on the nature of federal and Louisiana mineral

---

[6] The Government has endorsed the position that temporary physical takings claims are subject to a multi-factor balancing analysis. *See* Opening Brief of Appellant United States, *Caquelin v. United States*, No. 16-1663, (Fed. Cir.) (filed Aug. 9, 2016) at 39-40.

law, the duration, degree, and impact of the temporary taking, and the plaintiff's response, such as exercising the option to adopt the mineral operations as its own under Louisiana law. *See* PH Br. 29-31.[7]

The Government disputes that the accrual date for a temporary physical takings claim should be determined by a fact-specific examination of the claim because such an approach may produce inconsistent results. Gov. Br. at 27; *see also* Appx22 (90 Fed. Cl. at 67). That argument is flawed, however, because as the Supreme Court has frequently explained, "most takings claims turn on situation-specific factual inquiries." *Arkansas Game & Fish Comm'n*, 133 S. Ct. at 518 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). The existence of a temporary physical taking is no different and "should be assessed with reference to the 'particular circumstances of each case.'" *Id.* at 521.

In sum, this Court has stated that claims for temporary regulatory takings accrue when the temporary takings period ends. As the CFC noted in this case, the reasoning behind that rule is that property owners should be allowed to await the end of the regulation to assess fully the impact to their

---

[7] The Government does not believe "the vagaries of Louisiana's [M]ineral [C]ode" should inform the accrual date for Petro-Hunt's temporary takings. Gov. Br. at 27. Yet those "vagaries" are why this case exists—a controversy, in part, that would never arise in any of the other 49 states that allow for perpetual mineral ownership, or in Louisiana under its current law.

property. Because many of the same case-specific factors must be considered in temporary physical takings claims, the rule for the accrual of temporary takings should be the same, whether the taking is regulatory or physical in nature: "when the process that began it has ended."

Accordingly, this Court should reverse the CFC's judgment dismissing Petro-Hunt's temporary physical takings claims (Counts II and III, in part) as untimely when the claims were filed within six years of the mineral lease effectuating the taking ending or being terminated. The Court's ruling should apply equally to Petro-Hunt's temporary takings claims in the 2011 suit, No. 11-775.

## III. Section 1500 Does Not Bar Petro-Hunt's Claims

As Justice Stevens aptly recognized, "[28 U.S.C.§ 1500] is a badly drafted statute . . . [that] does not lend itself easily to sensible construction." *Keene Corp. v. United States*, 508 U.S. 200, 205 (1993) (Stevens, J., dissenting). Mindful of Justice Stevens' observation, Petro-Hunt set forth the most sensible basis for reversal of the CFC's judgment to avoid serious constitutional problems: A void compensation request—which was asserted alternatively in a court lacking jurisdiction to hear it and abandoned before filing suit in the CFC—is not a "pending" claim under § 1500. Petro-Hunt's proposed construction would avoid the constitutionally precarious

application of § 1500 in this case, which would preclude Petro-Hunt from asserting a constitutional right by the combined effect of § 1500 and the statute of limitations. There is no basis in the policy or phrasing of § 1500 that compels the CFC's erroneous ruling here.

Because the alternative request should be considered a nullity, only Petro-Hunt's claim to quiet title in the district court and its compensation claims in the CFC should be subject to a § 1500 analysis of operative facts. Petro-Hunt shows in its Opening Brief that its claims in the district court and the CFC do not have a sufficient overlap of operative facts to trigger § 1500's bar. PH Br. at 41-44. Likewise, the CFC recognized that a typical quiet title action such as Petro-Hunt's should not preclude the CFC from having jurisdiction over a sequential takings action because the operative facts are necessarily different. Appx37 (*Petro-Hunt, L.L.C. v. United States,* 105 Fed. Cl. 37, 43 (2012) (citing, *inter alia, Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1168 (Fed. Cir. 2011)). The Government acknowledges that the CFC's treatment of the void alternative request as a pending claim was the CFC's sole basis for finding that § 1500 barred Petro-Hunt's remaining takings claims that were not barred by the statute of limitations. Gov. Br. at 42 ("[T]he CFC's [§ 1500] ruling is based *only* on the district-court *takings* claim; thus Petro-Hunt could have avoided § 1500

14

by never filing that claim . . .") (emphasis added and in original). The Government thus concedes that Petro-Hunt's district court action and its CFC action were not based on substantially the same operative facts, but for the void alternative compensation request in the district court.[8]

In arguing that the analysis under § 1500 is not sensitive to the district court's lack of jurisdiction, the Government relies on *Frantz Equipment Co. v. United States*, 98 F. Supp. 579, 580 (Ct. Cl. 1951). There, the plaintiff asserted a counterclaim against the United States in the district court seeking the same amount of damages as alleged in its petition to the Court of Claims *Id.* The *Frantz* Court held that "the plaintiff lost its right, so long as said claim remained pending in the District Court, to institute and maintain suit in this court upon the same claim." While the Court stated that § 1500's applicability was not dependent on the district court's jurisdiction over the plaintiff's counterclaim, the Court noted that the question was not necessary to its decision on whether the district court counterclaim was a "suit or process" within the meaning of § 1500. *Id. Frantz* offers no discussion of whether the plaintiff's district court counterclaim, if abandoned before filing

---

[8] While the Government states that "the district court *had* jurisdiction over the takings claim on its face . . . [because] the complaint stated no specific amount of compensation sought," (Gov. Br. at 38), that argument lacks merit, as the Government itself asserted in its answer that the district court lacked jurisdiction to find a taking and award just compensation. Appx33 (105 Fed. Cl. at 40); *see also* 28 U.S.C. § 1346(a)(2).

in the Court of Claims, should still be considered pending under § 1500, or whether the United States ever asserted that the district court lacked jurisdiction.

Nonetheless, to the extent that *Frantz* stands for the proposition that the United States may use a void request beyond the district court's jurisdiction as a jurisdictional shield in the CFC and deprive litigants of their constitutional right to just compensation, Petro-Hunt respectfully submits that *Frantz* cannot apply here without raising serious constitutional concerns.

### A. Section 1500 Cannot Operate to Preclude Petro-Hunt's Constitutional Claims

The Government's argument in support of § 1500's constitutionality in this instance is simply that the statute says what it says, without regard to the constitutional implications. The Government argues that § 1500 would not have deprived Petro-Hunt of a forum in which to pursue its fundamental right to just compensation *if* Petro-Hunt had followed § 1500's requirements. Gov. Br. 42-43. But as Petro-Hunt explained in its opening brief, the Just Compensation Clause of the Fifth Amendment is a self-executing remedy. *See First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 315 (1987). Accordingly, the federal government is required to open its courts to litigants pursuing that remedy, despite

sovereign immunity.[9] While the express terms § 1500 may preclude the CFC's jurisdiction over "any claim" if the plaintiff has a related claim pending in another court, this arbitrary and "badly drafted" statute cannot operate to deprive Petro-Hunt of its constitutional right to just compensation under the circumstances. *See* PH Br. at 45-46.

The Government's discussion of *Keene Corp. v. United States*, 508 U.S. 200 (1993), is not instructive. Gov. Br. at 44. The *Keene* Court recognized the constitutional authority of Congress to limit jurisdiction, but it did not consider whether the limits of § 1500 violated the Constitution when, as applied, it would preclude a plaintiff from asserting a constitutional claim. *Keene* offers no guidance here.

As a saving grace, the Government offers that Petro-Hunt could have avoided § 1500's jurisdictional bar by never having filed its alternative compensation request in the district court, or by dismissing it and then

---

[9] This position is compatible with decisions finding that sovereign immunity need not be waived for plaintiffs to assert a takings claim against the states. *See, e.g., Seven Up Pete Venture v. Schweitzer,* 523 F.3d 948, 9554-55 (9th Cir. 2008) ("[S]tate courts must ... be available to adjudicate claims brought under the federal Takings Clause.... [T]his constitutionally enforced remedy against the States in state courts can comfortably co-exist with the Eleventh Amendment immunity of the States from similar actions in federal court."); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 528 (6th Cir. 2004) ("[W]here the Constitution provides a particular remedy, such as . . . through the Takings Clause . . . the state is required to provide that remedy in its own courts, notwithstanding sovereign immunity.").

refiling its CFC complaint after the Quiet Title Action concluded. Gov. Br. at 42 (citing *United States v. Tohono O'odham Nation*, 563 U.S. 307, 318 (2011)). Following the Government's suggestions leaves a plaintiff at the mercy of time, hoping that its district court action is put on a "rocket docket" given statute of limitations concerns. Petro-Hunt promptly pursued its Quiet Title Action, receiving a judgment in its favor in December of 2001. The appeals were filed in 2002, but the Fifth Circuit did not reach its first decision until 2004, reversing the district court and remanding the matter, which resulted in further appeals, all while the limitations clock continued to run. Even exercising reasonable diligence, Petro-Hunt's Quiet Title Action took eight years to conclude. *Tohono* is unavailing, since it did not address this situation in which § 1500 and the statute of limitations have combined to prevent a plaintiff from pursuing a constitutional claim.

Should the Court find that Petro-Hunt's claims have implicated § 1500's jurisdictional bar, the constitutional question presented here is ripe for review. Neither the Supreme Court nor this Court has addressed the constitutionality of §1500's application under the circumstances presented by this appeal. As Petro-Hunt explained in its Opening Brief, § 1500 cannot bar constitutional claims that do not require a waiver of sovereign immunity without offending the Constitution.

**B.    The Government's Contention That Petro-Hunt Waived Certain Arguments Regarding § 1500's Application Is Incorrect**

Throughout this litigation, Petro-Hunt has maintained that its alternative request in the district court was not a "pending claim" for the purpose of a § 1500 analysis. The Government errs in arguing that Petro-Hunt first presented this argument when moving for reconsideration. Gov. Br. at 36. Petro-Hunt pressed its argument that the alternative request in the district court was legally insignificant to the CFC both in opposition to the Government's motion to dismiss and at oral argument. *See* Appx2094-2095; Appx2165-2167, Appx2169-2172, Appx2174-2176.

In its reply in support in support of its motion to dismiss, the Government stated: "Petro-Hunt argues that the [district court] lacked jurisdiction over its takings claim, that it was seeking alternative relief allowed by the [Quiet Title Act], and that it abandoned its [district court] takings claim." Appx2155 (citing Appx2094–2095). The Government addressed the issue of whether Petro-Hunt's alternative request for compensation was a "pending claim" in another court for purposes of § 1500 when that other court lacked jurisdiction, relying on most of the same authorities that the Government now cites to this Court. Appx2154-2156. Thus the Government knew of and opposed the same arguments Petro-Hunt

has presented here. The CFC considered the same arguments in deciding the Government's motion to dismiss, as further reflected by the CFC's order denying the motion for reconsideration one day after it was filed, deeming further briefing on the issue unnecessary. Appx44.

By holding that pending claims under § 1500 do not include a legally void request over which the district court lacked jurisdiction, considering issues of sovereign immunity, the Court can avoid the complicated constitutional questions that arise under a more expansive decision, as discussed by Judge Taranto in his concurring opinion in *Ministerio Roca Solida v. United States*, 778 F.3d 1351, 1360-61 (Fed. Cir.), *cert. denied*, 136 S. Ct. 479 (2015). Even if the Government were correct that the statutory construction argument was waived, which Petro-Hunt denies, appellate courts often consider a new statutory argument not raised below, particularly if it will permit the avoidance of constitutional problems. *See, e.g., Cemex, S.A. v. United States,* 133 F.3d 897, 902 (Fed. Cir. 2001) (addressing argument not raised before trial court because it involved an issue of statutory construction); *Nat'l Advertising Co. v. City of Rolling Meadows*, 789 F.2d 571, 574-75 (7th Cir. 1986) (new statutory argument may be considered on appeal to avoid difficult constitutional argument).

The Government also errs by contending that Petro-Hunt waived its argument regarding § 1500's constitutionality. In the CFC, Petro-Hunt argued that § 1500 is unconstitutional as applied to Petro-Hunt's claims because it would deprive Petro-Hunt of its Fifth Amendment right to compensation and is unfair and unconstitutionally underinclusive because it punishes litigants through the order of filing rule in *Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965). Appx2124-2130. In briefing on the motion to dismiss, Petro-Hunt specifically argued that while Congress has the power under Article III of the Constitution to determine federal courts' jurisdiction, except that of the Supreme Court, that power is not without limits, and legislation pertaining to federal jurisdiction must not deprive a litigant of any constitutional rights. Appx2099.

The Government addressed Petro-Hunt's constitutional argument and framed it as follows: "Petro-Hunt bases its argument on an assumption that application of § 1500 under these facts would interfere with Petro-Hunt's 'fundamental, constitutionally guaranteed right' to seek just compensation and deny Petro-Hunt its 'fundamental right [to] access the courts.'" Appx2157-2158; *see also* Appx2162. The Government argued that "Petro-Hunt, like all takings claimants, has no constitutional right of access to this Court." *Id.* (citing *Tohono*, 563 U.S. at 317).

Petro-Hunt requested leave to file a supplemental memorandum to provide the CFC with further elaboration on issues and authorities discussed by the parties in prior briefing about § 1500's impingement on the Fifth Amendment right to just compensation, specifically when analyzed under *Tohono*. The CFC, without prejudice, denied Petro-Hunt leave to file the supplemental memorandum. Dkt. Entry (Jan. 25, 2012). At oral argument, in response to a request to file the supplemental memorandum post-argument, Judge Allegra stated that he was sorting through the numerous § 1500 opinions and was hesitant to open up briefing and create more work for the parties. Appx2177-2178. Counsel for Petro-Hunt informed Judge Allegra of what Petro-Hunt sought to explain further in the supplemental memorandum, and Judge Allegra responded that he was "very familiar" with and "in a position to be able to assess that issue." Appx2178-2179. Therefore, the Government's waiver arguments do not accurately reflect the proceedings in the CFC and are without merit.

In any event, an appellate court may consider an issue not presented below if "(i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection at the district court level; (iv) the issue presents significant questions of general

impact or of great public concern; or (v) the interest of substantial justice is at stake." *See Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1344-45 (Fed. Cir. 2001) (internal citations omitted).[10] Petro-Hunt's arguments relate to pure questions of law concerning jurisdiction and were considered by the CFC in reaching its decision, were addressed by the Government in briefing and oral argument to the CFC and in its Response to this Court, can be addressed without additional fact finding, and concern issues of constitutional magnitude. The Government's waiver arguments lack merit.

In conclusion, the Court should reverse the CFC's judgment dismissing Petro-Hunt's temporary takings claims (Counts II and III, in part) and find that 28 U.S.C. § 1500 does not bar any of Petro-Hunt's claims in the CFC.

If the Court rules that Petro-Hunt's permanent and temporary takings and contract claims are not barred by the statute of limitations, those claims in Petro-Hunt's 2011 suit, No. 11-775, are undisputedly not subject to § 1500's bar. *See* Gov. Br. at 16, 28.

---

[10] Furthermore, the appellate court does "not review supporting arguments, but only the decisions reached by the trial court;" therefore, there must be some "claim or issue" that was preserved for appeal by being "pressed or passed on" by the court below. *See Interactive Gift Exp.*, 256 F.3d at 1346 (citing *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983) ("We sit to review judgments, not opinions.")).

**IV.   Petro-Hunt's Judicial Taking Claim Falls Under the Court of Federal Claims' Exclusive Jurisdiction**

If just compensation claims for the judicial elimination of private property are actionable under the Fifth Amendment, how can the CFC not exercise jurisdiction over Petro-Hunt's judicial takings claim under the Tucker Act, 28 U.S.C. § 1491(a)(1), when that claim does not seek collateral review and reversal of another court's decision? The Government's response to this question fails to address the apparent conflict between the CFC's exclusive jurisdiction and its failure to exercise that jurisdiction here. Under the Government's theory, there can never be a takings claim for compensation based on the actions of a federal court.

*Stop the Beach* stated that "the Takings Clause bars *the State* from taking private property without paying for it, no matter which branch is the instrument of the taking." *Stop the Beach Renourishment, Inc. v. Fl. Dept. of Env't Res.* 560 U.S. 702, 715 (2010) (plurality opinion) (emphasis in original).[11] The Government is mistaken that the *Stop the Beach* decision set no binding precedent at all. Though analyzing the issue somewhat differently, both the plurality and Justice Kennedy, joined by Justice

---

[11] The Government cites *Texas v. Brown*, 460 U.S. 730, 737 (1983), which recognized that even though a plurality opinion "is not binding precedent, as the considered opinion of four Members of the Court it should obviously be the point of reference for further discussion of the issue."

Sotomayor, concluded that there are constitutional limits on the judicial elimination of private property rights.[12]

This Court has recognized that judicial takings are actionable, not in theory, as the Government inaccurately states, but in law. *See Smith v. United States*, 709 F.3d 1114, 1116–17 (Fed. Cir.), *cert. denied*, 134 S. Ct. 259 (2013) ("It was recognized prior to *Stop the Beach* that judicial action could constitute a taking of property. . . . The Court in *Stop the Beach* did not create this *law* but applied it.") (internal citation omitted) (emphasis added). In *Smith*, this Court concluded that Mr. Smith's cause of action for the judicial taking of his license to practice law became "complete and present" when each judicial action of disbarment occurred, not when the Supreme Court decided *Stop the Beach* in 2010, and as a result, his takings claim was time-barred. *Id.* at 1117. Thus, the Government ignores the import of the *Smith* opinion, which is that a cause of action for a judicial taking is actionable under the Takings Clause of the Fifth Amendment.

---

[12] *See*, *e.g.,* Josh Patashnik, *Bringing a Judicial Takings Claim*, 64 Stan. L. Rev. 255, 262 (2012). "[O]ne should not conclude . . . that *Stop the Beach Renourishment* set no binding precedent. While the plurality and Justice Kennedy arrived at their conclusions in different ways, they agreed on an affirmative answer to the key question presented by *Stop the Beach Renourishment*: whether there exists some federal constitutional restraint on judicial elimination of private property rights. . . . Justice Kennedy's opinion did not conclude that the Takings Clause was inapplicable to judicial opinions." *Id.* The author of this article served as a clerk for Justice Kennedy during the Court's 2012-2013 term.

Despite these decisions showing that judicial takings are actionable, the Government responds that the CFC lacks jurisdiction to examine the decision of another court because finding otherwise would permit "collateral attacks" on other court's judgments and upset the standard process of appellate review. Gov. Br. at 45-47. In this case, a "collateral attack" on the merits of the Fifth Circuit's decision and the resulting final judgment would be an effort to have the CFC set aside and void those decisions. To be sure, the CFC lacks the authority to do so. But Petro-Hunt's judicial takings claim does not request or require the CFC to conduct an appellate review of another court's decision in the sense of correcting legal errors that may have been committed. The Government refuses to recognize the distinction between challenging the *merits* of a decision in an effort to reverse it and seeking just compensation for the *results* of a decision that eliminated an established property right. Yet that distinction is precisely why Petro-Hunt's judicial takings claim falls within the CFC's exclusive jurisdiction.

## A. The Supreme Court Is Not the Only Forum That Can Adjudicate a Judicial Takings Claim

The Government offers no justification for its argument that if judicial takings exist, no forum, other than perhaps the Supreme Court, is open to such claims for constitutionally guaranteed compensation. *See* Gov. Br. at 53. As Petro-Hunt noted in its Opening Brief, the Supreme Court has stated

that "a claim for just compensation under the Takings Clause *must* be brought in the Court of Federal Claims in the first instance . . ." *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998) (emphasis added). The Government's argument that invalidation is the only available remedy for a judicial taking is merely a pretext for its argument that the CFC lacks authority to compensate Petro-Hunt. Gov. Br. at 52.

In *Stop the Beach*, the Supreme Court stated that it would have reversed the Florida Supreme Court's judgment if it had resulted in a judicial taking. 560 U.S. at 723. But the Court did not exclude the recovery of just compensation for a judicial taking. Rather, the assumed remedy for a taking, judicial or otherwise, is compensation. The plurality opinion stated that there was "no reason why [compensation] would be the exclusive remedy for a judicial taking" in response to Justice Kennedy's concern that courts would be able to redress a judicial taking only through compensation. *Id.* Justice Kennedy stated, "It is thus questionable whether reviewing courts could invalidate judicial decisions deemed to be judicial takings; they may only be able to order just compensation." *Id.* at 741.[13] Petro-Hunt agrees that just compensation is the only proper remedy here.

---

[13] Justice Kennedy noted that "under our precedents . . . a party who suffers a taking is only entitled to damages, not equitable relief." *Stop the Beach*, 560 U.S. at 740.

The Government inconsistently argues that Petro-Hunt did plead its case for a judicial taking in its petitions for writs of certiorari to the Supreme Court and that the Court declined to review the Fifth Circuits decisions, while also asserting that Petro-Hunt failed to make its judicial takings argument in its petitions for writ of certiorari to the Supreme Court. Gov. Br. at 53. None of the questions presented to the Supreme Court for review during the Quiet Title Action concerned the Fifth Circuit's decisions having effectuated an unconstitutional taking.[14] Petro-Hunt's 2004 petition asserted that if the Fifth Circuit's decision became final, Petro-Hunt would pursue its just compensation remedy against the United States in the CFC.

Nevertheless, it is well-settled that the Supreme Court's denial of certiorari does not constitute a ruling on the merits. *United States v. Carver*, 260 U.S. 482, 490 (1923); *see also Maryland v. Baltimore Radio Show*, 338 U.S. 912, 917-19 (1950) (Frankfurter, J., respecting the denial of petition for writ of certiorari) ("Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on

---

[14] *See Petro-Hunt, L.L.C. v. United States*, No. 07-563, Petition for Writ of Certiorari, 2004 WL 1791156 (S. Ct. Aug. 5, 2004); *Petro-Hunt, L.L.C. v. United States*, No. 07-563, Petition for Writ of Certiorari, 2007 WL 3168800 (S. Ct. Oct. 21, 2007).

the merits of a case which it has declined to review."). The Government's attempt to interject that the Supreme Court has denied Petro-Hunt's judicial takings claim is mistaken and should be rejected.

The Supreme Court and this Court have recognized that there are constitutional restraints on the judicial elimination of private property. Limiting the CFC's exclusive jurisdiction in this instance would mean that the actions of federal courts are always insulated from the duty to pay just compensation under the Fifth Amendment. Accordingly, Petro-Hunt's judicial takings claim was improperly dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons set forth in this Reply Brief and in its Opening Brief, Petro-Hunt asks this Court to reverse the CFC's judgment dismissing Petro-Hunt's takings and contract claims (Counts I–VIII) for lack of jurisdiction and remand to the CFC to adjudicate the claims on their merits.

November 7, 2016                    Respectfully submitted,


                                   /s/ J. Ralph White
Edmund M. Amorosi                  J. Ralph White
SMITH PACHTER MCWHORTER PLC        Sharon L. Andrews
8000 Towers Crescent Drive         B. Alan Baker
Suite 900                          WHITE ANDREWS &
Tysons Corner, Virginia 22182      SHACKELFORD, LLC
(703) 847-6300                     650 Poydras Street, Suite 2319
eamorosi@smithpachter.com          New Orleans, Louisiana 70130
                                   (504) 799-2585
                                   ralph@whiteandrews.com
D. Joe Smith
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
jsmith@jenner.com


            *Counsel for Petro-Hunt, L.L.C.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2016, the foregoing Reply Brief of Plaintiff-Appellant was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

November 7, 2016

/s/ J. Ralph White
J. Ralph White
WHITE ANDREWS &
SHACKELFORD, LLC
650 Poydras Street, Suite 2319
New Orleans, Louisiana 70130
(504) 799-2585
ralph@whiteandrews.com

*Counsel for Petro-Hunt, L.L.C.*

# CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff-Appellant certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains <u>6710</u> words, based on the "Word Count" feature of Word for Mac 2011, including footnotes and endnotes. In accordance with Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, Abbreviations, and Statement of Related Cases.

November 7, 2016

/s/ J. Ralph White
J. Ralph White
WHITE ANDREWS &
SHACKELFORD, LLC
650 Poydras Street, Suite 2319
New Orleans, Louisiana 70130
(504) 799-2585
ralph@whiteandrews.com

*Counsel for Petro-Hunt, L.L.C.*